**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KEITH CUSTER, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TTI OUTDOOR POWER EQUIPMENT, INC., a Delaware Corporation,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Keith Custer ("Plaintiff"), by and through his attorneys, bring this action against TTI Outdoor Power Equipment, Inc. ("Defendant"). Plaintiff alleges the following based on personal knowledge as to his own acts and based upon the investigation conducted by his counsel as to all other allegations:

## INTRODUCTION

1. Plaintiff brings this class action against Defendant for selling its "Ryobi" branded electric pressure washers, including but not limited to the RY142300 and RY142711VNM models (the "Products").[1]

2. The Products have an identical dangerous defect. Specifically, the pressure washer's capacitor can overheat and burst, causing parts to be forcefully ejected, posing a risk of serious injury from impact to the user or bystanders (the "Defect").

[1] The Products at issue are: (1) RY142300 Electric 2300 PSI Pressure Washer; and (2) RY1427111 Electric 2700 PSI Pressure Washer. Plaintiff reserves the right to amend this Complaint to include all other similarly situated products.

3. Defendant has been aware of the Defect, which is dangerous, for years having received "135 reports of capacitors overheating, including 41 reports of explosions, resulting in 32 injuries and/or fractures to the fingers, hands, face, and eyes."[2]

4. On August 8, 2025, the Products were recalled (the "Recall"), and consumers were instructed to "immediately stop using" them. Hence, the pressure washers are unreasonably dangerous, and unsuitable for their principal and intended purpose.

5. Defendant refuses to provide refunds for its admittedly defective pressure washers. Instead, consumers' only option is to attempt to repair the Products themselves—regardless of whether they have the tools, aptitude or time to do so.

6. However, the Recall—which was only issued *after* 135 reports of malfunctions, including 41 reports of explosions, resulting in 32 hand, finger, face, eye injuries and/or fractures—is the practical opposite of how an effective recall should be designed. It is completely inadequate and fails to offer consumers any meaningful remedy.

7. The Recall replacement part requires the handling of dangerous capacitors that can cause injury or death. As Defendant admits in the Recall, the capacitors at issue are defective and prone to explode. Thus, a reasonable consumer should not expected to take the steps required under the Recall, particularly because a capacitor continues to hold an electric charge after being disconnected from its power supply, as it is designed to store an electrical charge much like a battery. But unlike a battery, a capacitor is designed to discharge its stored electricity in a rapid, short, high-current burst (like a taser). Even under the best of circumstances, replacing a capacitor is treacherous and outside the comfort level of most average consumers (the target demographic

---

[2] https://www.cpsc.gov/Recalls/2025/TTI-Outdoor-Power-Equipment-Recalls-RYOBI-Pressure-Washers-Due-to-Projectile-Hazard-Risk-of-Serious-Injury (last accessed Oct. 10, 2025).

for Defendant's low-cost power tools).

8. However, this is not the best of circumstances. The defective capacitor in the Products overheats and explodes, making them even more dangerous to handle. Indeed, this is the reason for the Recall: the defective capacitor has been reported to spontaneously explode, potentially launching shrapnel, and have already caused fractures and facial injuries. Most consumers are unlikely to participate in a recall that requires them to repair dangerous electrical equipment without any assistance. Despite being aware of the dangers involved, Defendant still only offers consumers a self-repair program, instead of replacing or refund the defective Products. It is clear Defendant is more interested in limiting the costs of the Recall than protecting consumers.

9. Further, Defendant's Recall is inconsistent with general industry practices. It has become common practice for U.S. companies that sell small consumer goods to offer refunds as an alternative to repairs or replacements when their products are recalled. This option incentivizes consumers to surrender their dangerous products pursuant to the recall, thereby getting more of the dangerous products out of circulation. Moreover, research shows that response rates are lower for recalls that require complicated steps and fail to provide consumers with a full refund.[3] Defendant decided not to follow prevailing industry standards. Instead, Defendant implemented a half-hearted recall that allows it to say it is doing the right thing, while prioritizing the protection of its bottom line.

10. By selling a dangerously defective product, Defendant violated the Uniform

[3] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed August 25, 2025).

Commercial Code's ("UCC") warranty provisions and Massachusetts consumer protection statutes.

11. Prior to the Recall and despite the serious safety dangers presented by the Products, Defendant intentionally marketed and sold the Products as safe and fit for their intended purpose and failed to effectively disclose to consumers that Products posed a risk of explosion.

12. Defendant knew, or should have known, of these incidents, yet it did nothing. Indeed, despite reported incidents dating back to 2017, Defendant failed to issue any warning or make design changes to remedy the Defect and continued profiting from its sales throughout the United States.

13. The Defect existed at the point of purchase. Due to Defendant's marketing of the Products, along with Defendant's failure to disclose to consumers at the time of purchase that the Products contained the Defect, Plaintiff and class members trusted Defendant and its representations that the Products would be safe to use as intended and paid a premium for that important quality. Additionally, despite the Recall, defects in the Products persist, rendering it unfit and worth less than advertised and warranted.

14. The existence of the Defect is a material fact that reasonable consumers, including Plaintiff and class members, would have considered when deciding whether to purchase the Products. Before purchasing the Products, Plaintiff and class members did not know the Products had the Defect and that using the Products for their intended and foreseeable purpose would place them at risk of harm due related to the explosion of the capacitors.

15. Every Product suffers from the uniform Defect, which, unknown to consumers but known to Defendant, exists at the point of purchase and poses an unreasonable safety hazard to

consumers. As such, Plaintiff and all reasonable consumers are victims of the unfair bargaining power between them and Defendant based on Defendant's superior industry knowledge.

16. Defendant was able to charge a premium price for the Products due to its marketing, and its failure to disclose to consumers that the Products contain the Defect, because Defendant knew that safety and suitability of the Products for use (which naturally includes structural integrity and lack of a risk of harm or death to themselves) are paramount for consumers.

17. Further, Defendant is well aware that if it truthfully informed consumers of the dangers of the Products' Defect, it would significantly impact its sales as consumers would have made different purchasing decisions.

18. No reasonable consumer would have purchased the Products on the same terms or conditions if they knew of the Defect. Defendant chose to put consumers' safety at risk to sell more Products and now, after the inevitable explosions and injuries were brought to light, Defendant still opted for decisions that put profit over people. Despite its belated acknowledgment of the Defect, Defendant still has not provided a meaningful remedy to consumers, including Plaintiff and class members.

19. Had Plaintiff and class members known about the Defect at the time of purchase and the associated risks caused by the Defect, they would not have purchased the Products or would have paid less for them.

20. Plaintiff, on behalf of himself and class members, seeks damages and all other relief available under law and equity from Defendant, including punitive damages for Defendant's appalling and unconscionable misconduct. Plaintiff also seeks classwide injunctive relief, including: (i) a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Products; (ii) the implementation of a corrective advertising campaign to better

alert consumers to the dangers of the Defect; (iii) an offer to replace the Products with a reasonable and safe product; and/or (iv) a full refund for the purchase price of the Products. Plaintiff provided Defendant with notice of the breach of express and implied warranties via service upon Defendant's registered agents of service on September 18, 2025.

21. This action seeks to hold Defendant accountable for its conscious decision to use a defective design, conceal the known Defect and for its insufficient recall remedy.

## **JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because members of the putative class are citizens of a State different from Defendant and the amount in controversy exceeds $5,000,000.00 before interest and costs.

23. The amount-in-controversy requirement is satisfied here. There are approximately 764,000 Products at issue. The average price of the Products was $350.00. Therefore, the amount in controversy is over $250 million, without accounting for punitive damages and attorney's fees (*i.e.*, 764,000 x $350.00).

24. This Court has personal jurisdiction over Defendant. Defendant advertises and sells the Products to prospective customers in this State and District. Defendant distributed the Products to Massachusetts consumers. This distribution included distribution through Defendant's own website and third-party retailers, which sold the Products to Massachusetts consumers. Defendant marketed the Products on the internet, and Defendant expected and knew that Massachusetts consumers would purchase some of those Products in the state of Massachusetts. A substantial portion of the events giving rise to the claims alleged here occurred in this State.

25. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, as Defendant regularly

transacts business in this District, and Defendant intentionally availed itself of the laws and markets within this District.

26. Venue is also proper because Plaintiff is a resident and citizen of this District.

## PARTIES

### I. Plaintiff Keith Custer

27. Plaintiff Keith Custer resides in Mashpee, Massachusetts and is a citizen of the state of Massachusetts. Plaintiff purchased RY142300in approximately 2020 from a Home Depot located in Massachusetts. Prior to the purchase, Plaintiff read the labeling and packaging that identified the pressure washer. Plaintiff believed that it would safely function as a pressure washer.

28. There were no warnings about the Defect on the Product packaging, on Home Depot's product webpage or anywhere else. The Defect was material to Plaintiff.

29. Had Plaintiff known that the Product possessed the Defect, he would not have made that purchase or would not have purchased the Product on the same terms or at the same price. As such, Plaintiff paid a premium price for the Product.

30. Plaintiff was only notified of the Recall because a friend provided him with a link to the announcement.

31. Plaintiff would likely purchase Ryobi pressure washer products in the future if Defendant corrects the problems alleged herein so that the Products function safely.

### II. Defendant TTI Outdoor Power Equipment, Inc.

32. Defendant TTI Outdoor Power Equipment, Inc. ("TTI") is a Delaware corporation with a principal place of business in Anderson, South Carolina.

33. TTI designed, produced and marketed Products at issue here, and is responsible for the current Consumer Product Safety Commission ("CPSC") recall concerning those Products.

34. TTI manufactured, distributed, retailed and warranted the Products in the United States during the relevant time period.

## FACTUAL ALLEGATIONS

35. At all times relevant to the issues alleged in this Complaint, Defendant engaged in the business of designing, manufacturing, importing, marketing, labeling, distributing, selling and/or introducing into interstate commerce the "Ryobi" branded pressure washers, including the Products.

36. The Products were marketed as pressure washers engineered to handle the toughest jobs, versatile, convenient, quick cleaning of many surfaces and safe to use.

37. Defendant authored and/or approved the information that appears in the Owner's Guide for the Products and on the labels and packaging of the Products.

38. The Products were sold nationwide at Home Depot, an authorized dealer of Ryobi products, Direct Tools Factory Outlet stores, and online at homedepot.com and directtoolsoutlet.com from July 2017 through June 2024 for approximately $300.00-$400.00.[4]

39. At all relevant times, Defendant marketed its Products in a consistent and uniform manner.

40. Defendant provides a three-year limited warranty on the Products that covers any "defects in material and workmanship" if "used for personal, family or household use." In the Owner's Guide included in each of the Products, Defendant extends this warranty directly to consumers.[5]

---

[4] *See supra* note 2.

[5] RY142300 - Electric 2300 PSI Pressure Washer Operators Manual, https://images.homedepot.ca/pdf/1001029362_user-pdf.pdf.

41. As stated by Defendant on its website: "the pressure washers' capacitor can overheat and burst, causing parts to be forcefully ejected, posing a risk of serious injury from impact to the user or bystanders." This defect creates a "projectile hazard" that poses a "risk of serious injury."[6]

42. Defendant received 135 reports of malfunctions, including 41 reports of explosions, resulting in 32 hand, finger, face, eye injuries and/or fractures.[7]

43. In addition, all consumer complaints made to the CPSC are automatically forwarded to manufacturers. Records show that Defendant received alarming complaints about the Defect for *years*, and yet did nothing. The examples listed below are illustrative and do not represent the universe of complaints that Defendant received. Dates shown are the dates when Defendant received the reports from the CPSC:

March 29, 2023:

> *"My Ryobi Electric Pressure Washer Model RY142711VNM washer exploded. I supplied water to the unit, plugged it in, released pressure from the waterline, pressed the power button, and the pressure washer exploded. Sounded like a bomb. My right hand index finger was busied [SIC] and bleeding after being cut by debris. Could not hear clearly for a few minutes due to the explosion.*[8]

October 7, 2024:

> *"On September 22, 2024, I was washing my truck at home with my Ryobi electric pressure washer. When I went to press the push to start button, the unit exploded and injured by hand. The lid and bolts blew off. There was a very loud exploding noise that set off car alarms. My hand immediately*

---

RY142711VNM - Electric 2700 PSI Pressure Washer, https://556aa8d9de68ea9c4f29-0a8acad11a4df5016d26cc39a7429843.ssl.cf1.rackcdn.com/2/RY142711_095079815_799_trilingual_03.pdf

[6] In Store Recall Notice, https://cdn.shopify.com/s/files/1/0651/3668/9323/files/Final_In-Store_Poster_08.20.25_home_Depot.pdf?v=1756324770.

[7] *See supra* note 2

[8] https://www.saferproducts.gov/PublicSearch/

> *swelled up so I went to the emergency room. Luckily, I did not have any broken bones in my hands or fingers."*[9]

<u>January 16, 2025</u>:

> *"My Ryobi RY142711VNM (2700 PSI 1.1 GPM) Electric Pressure Washer exploded. As I pressed the power button to activate the machine, the top of the unit suddenly exploded with significant force. The explosion caused internal components to eject from the machine, accompanied by a loud noise and a strong burning odor. Upon inspection, I observed that a component inside the machine, possibly a capacitor, had exploded. The incident left the interior of the unit burned and coated with black, soot-like residue. Additionally, the wiring was completely disconnected, and the force of the explosion dislodged the screwed-on cover and the power button. This incident occurred at the moment of startup and resulted in an injury to my right-hand index finger."*[10]



(Photograph provided with report).[11]

[9] *Id.*

[10] *Id.*

[11] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5109233

44. Defendant manufactured and sold the Products as electric pressure washers, and implied that they were suitable for that purpose. However, Defendant failed to disclose that the Products had defective capacitors that can overheat and burst, posing an unreasonable "risk of serious injury." The risk associated with the Products at issue was beyond any reasonable or nominal risk that might be associated with pressure washers generally.

45. Defendant made partial representations to Plaintiff and class members, while suppressing the Defect. Specifically, by displaying the Products and describing their functions and parts, the Defendant implied that the Products were suitable and reasonably safe to use as pressure washers, without disclosing that they had a critical safety-related Defect.

46. Plaintiff and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the Recall.

47. At the time of purchase, Plaintiff and class members did not know, and did not have reason to know, that the Products were defective. Defendant had exclusive knowledge of that fact.

48. Indeed, Defendant is aware of the dangers associated with the Defect and its Products as evidenced in the Recall.

49. Despite the industry standards that ensure that a pressure washer's capacitor should not overheat and burst and operate safely, and Defendant's representations to the same effect, the Products can overheat and burst, causing parts to be forcefully ejected, posing a risk of serious injury from impact to the user or bystanders.

50. Defendant knew about this Defect, but Defendant did not disclose this Defect to consumers. Not only did Defendant design and manufacture the Products, and was therefore aware of the Defect resulting from its efforts, Defendant also received consumer complaints, warranty

claims and injury reports regarding the Defect. Indeed, Defendant has received over 135 reports of capacitors overheating, including 41 reports of explosions, resulting in 32 injuries and/or fractures to the fingers, hands, face and eyes.[12] At least one lawsuit has already been filed.[13]

51. Defendant should have known about the Defect through normal quality assurance inspection and testing. Pursuant to applicable industry standards, a pressure washer sold for consumer use should not be constructed in such a way that one of the main components can overheat and burst. Defendant has a duty to comply with industry standards and to ensure that the Products are not constructed in such a way that the Products become a danger to the person operating it and to bystanders. This includes quality assurance inspections and testing to assure that the Products that Defendant is selling conform with the industry standards.

52. On information and belief, Defendant had actual knowledge of the Defect as early as 2017.[14] Defendant neither disclosed the Defect nor issued pre-sale warnings or post-sale warnings, to consumers or purchasers, that some of the Products' capacitors can overheat and burst causing parts to be forcefully ejected, posing a risk of serious injury from impact.

53. It was only on August 28, 2025, after nearly eight years of selling the Products, that Defendant finally recalled the 764,000 Products sold in the United States.[15] Presently, Defendant explicitly warns that consumers should immediately stop using the recalled pressure washers and request the remedy.[16] Thus, Defendant admits: (a) the Products are not fit for their main purpose; and (b) are not safe to use in their current form.

---

[12] *See supra* note 2.

[13] *Angelini v. TTI Outdoor Power Equipment, Inc.*, No. 5:25-cv-02280 (C.D. Cal.).

[14] *See supra* note 2.

[15] *Id.*

[16] *See supra* note 7.

54. However, the Recall is nothing short of perilous due to its inexcusable delay in notice and the wholly inadequate remedy. Despite the Defect rendering the Products unsafe and unsuitable for their intended use, the Products remained on the market following multiple explosions and resulting injuries and remain on the market after a weak Recall that does not provide proper remedies, includes incredibly complicated and confusing instructions, continues to put consumers at risk, and was ultimately designed to fail.

55. Despite having the capability and expertise to identify and mitigate the Defect, Defendant failed to redesign the Products, recall the entirety of the Products or issue sufficient consumer warnings for almost a decade. This delay contributed to the continued availability of defective Products and the repeated harm caused. Defendant prioritized profit over the integrity and safety of the Products and pushed the Products into the marketplace with the Defect.

56. Defendant's actions and priorities in delaying the Recall clearly indicate a prioritization of profit over safety of consumers. Defendant made significant revenue from the sale of the Products, which were sold nationwide resulting in hundreds of millions of dollars in revenue.

57. Consumers, including Plaintiff, reasonably relied on Defendant's representations that the Products were safe and able to be used for their intended purpose, and included basic safety features that an ordinary consumer would expect to accompany any consumer pressure washer. Defendant misrepresented, concealed and otherwise omitted material facts that would have been important to Plaintiff and class members in deciding whether to purchase the Products. Defendant intended to, and did, deceive reasonable consumers, including Plaintiff and class members. Accordingly, Plaintiff and class members: (a) reasonably relied upon Defendant's misrepresentations and concealment of these material facts; and (b) suffered monetary injury as a proximate result of that justifiable reliance.

58. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Indeed, the Defect: (a) can cause serious injury; and (b), as conceded by Defendant, renders the Products unsuitable for their primary feature: pressure washing.

59. Plaintiff and the class members paid money for the Products, but Plaintiff and the class members did not obtain the full value of the advertised/warranted Products due to Defendant's misrepresentations and omissions. Had Plaintiff and class members known the truth about the Products, *i.e.*, that they had a serious safety Defect, Plaintiff and class members would not have purchased them at the price at which they bought the Products. Consequently, Plaintiff and the class members suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

60. At all relevant times, Defendant, while concealing the Defect, actively and intentionally misrepresented the qualities and characteristics of the Products. Accordingly, Plaintiff's and class members' lack of awareness was not attributable to a lack of diligence on their part.

61. Defendant misrepresented the Products and concealed the Defect to: (a) sell more units of Products; (b) avoid the costs from a recall; and (c) delay Plaintiff and class members from suing.

62. Due to Defendant's intentional misrepresentations and active concealment of and/or failure to inform Plaintiff and class members of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein are tolled. Furthermore, Defendant's intentional misrepresentations and active concealment estops it from relying on any statutes of

limitations.

63. Moreover, Plaintiff and class members did not discover that the Products had a Defect, until Defendant recalled the Products. Plaintiff and class members had no realistic ability to uncover the Products' Defect given that it involved a defect in workmanship, parts or materials in the Products. Defendant's active concealment of the true nature of the Products hampered Plaintiff and class members' ability to discover their causes of action.

64. The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

a. First, no refunds are provided, and as a result, this class action seeks monetary relief that the Recall does not provide.

b. Second, the Recall was only briefly publicized and in a very limited manner. Therefore, on information and belief, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

65. Even if they did receive notice, it is unlikely that a reasonable consumer would take the steps required by the Recall, which requires consumers to replace the defective capacitor. This is because a capacitor continues to hold an electric charge after being disconnected from its power supply, as it is designed to store an electrical charge much like a battery. But unlike a battery, a capacitor is designed to discharge its stored electricity in a rapid, short, high-current burst (like a taser). This makes handling capacitor especially dangerous, known to cause causing injury or even death. Even under the best of circumstances, replacing a capacitor is treacherous and outside the comfort level of most average consumers (the target demographic for Defendant's low-cost power tools).

66. However, this is not the best of circumstances. The defective capacitor in the Products overheats and explodes, making them even more dangerous to handle. Indeed, this is the

reason for the Recall: the defective capacitor has been reported to spontaneously explode, potentially launching shrapnel, that have already caused fractures and facial injuries. Most consumers are unlikely to participate in a recall which requires them to repair dangerous electrical equipment without any assistance. Despite being aware of the dangers involved, Defendant still only offers consumers a self-repair program, instead of replacing or refund the defective Products. It is clear that Defendant is more interested in limiting the costs of the Recall than protecting consumers.

67. Additionally, a study conducted by Kids in Danger found that product recalls generally have a low level of participation when the recall includes cognitive overload, requires significant time and effort, offers a repair (versus a refund which has higher participation), and when consumers are asked to repair, deconstruct, and/or physically destroy parts of the product, but to continue using them in this destructed form rather than a safe replacement product.[17]

68. As noted by a study prepared for the CPSC, response rates for recalls are significantly reduced when it involves cognitive or task overload, and when they do not adequately motivate consumers to participate.[18]

69. Thus, Defendant's choice to require the surgical removal of parts of the Products by their consumers—who trusted Defendant to sell them a Product safe and suitable for their use—renders the Recall's ability to inspire participation a dismal prospect at best. Furthermore,

[17] New KID Report and Consumer Survey Reveal Need for Improvements in Children's Product Recall Process, Kids In Danger, Press Release, (September 12, 2024) https://kidsindanger.org/wpcontent/uploads/2024/09/Recall-Effectiveness-and-Survey-Report-PressRelease.pdf#:~:text=%5BChicago%2C%20IL%5D%20%E2%80%93%20Kids%20In%20Dange r%20%28KID%29%2C%20a,new%20reports%20looking%20to%20better%20assess%20recall %20effectiveness and hhttps://kidsindanger.org/wp-content/uploads/2024/09/KID-ConsumerRecall-Survey-Report.pdf (last accessed August 22, 2025).

[18] *See supra* note 3.

Defendant's failure to offer consumers with a monetary refund further culls the Recall's effectiveness resulting in a Recall that is inherently stunted and designed to fail.

70. Defendant intentionally chose the route more profitable for its business and assumingly less damaging to its branding and purported commitment to safe and durable Products.

71. Further, it is well known that product recalls generally have a low level of participation when consumers are not provided with a full remedy:

> Generally, firms should offer full remedy to achieve high recall effectiveness. While this seems like an obvious suggestion, our data shows that firms do not always follow that suggestion, even when the product and defect are the same. This is particularly puzzling as research also indicates that offering full remedy is the dominant strategy to preserve customer satisfaction after a product recall (Mafael *et al*., 2022) and protects firm reputation after the recall (Germann *et al*., 2014).[19]

72. Despite the knowledge that full remedies lead to higher recall rates, the serious risk the Defect presents and the additional risks the Recall presents, Defendant offered a minimal remedy in its Recall, ensuring lower participation rates that will put more consumers at risk as the Products remain at homes throughout the country.

73. Between Defendant's dangerous self-help remedy and the lacking notice of the Recall, the recall remedy is inadequate and illusory. Here, Plaintiff demands that Defendant provide actual meaningful relief for the hazardous Products it put on the market.

**<u>THE UNCONSCIONABILITY AND FAILURE OF ESSENTIAL PURPOSE OF THE WARRANTIES</u>**

74. Defendant expressly warranted, via Owner's Manuals, advertisements, pamphlets, brochures, circulars, samples, and models, that the Products are fit for the ordinary purpose for which they are sold.

[19] Sascha Raithel, *et al*., Product recall effectiveness and consumers' participation in corrective actions, Journal of the Academy of Marketing Science (Aug. 19, 2023) (online at https://link.springer.com/article/10.1007/s11747-023-00967-x).

75. Prior to the point of sale, Defendant also warrants that its Products are safe and durable.

76. Moreover, Defendant's Products are covered by the warranty of merchantability, which guarantees that a seller who deals in particular goods by their occupation promises that the goods sold are fit for their ordinary purpose for which they are intended to be used.

77. Defendant clearly intended its warranties to apply directly to these consumers who depend on Defendant to provide safe and durable Products.

78. Defendant manifests intent that its warranties apply to Plaintiff and class members as third-party beneficiaries is evident from the statements in its product literature, which begins on the date of the consumers' purchases and excludes commercial, non-residential use.

79. However, despite these warranties, as described herein, the Products contain a uniform Defect prior to and at the time of purchase, causing them to commonly and consistently fail in their primary purpose.

80. Defendant knew, or should have known, of the Defect and dangers posed in its Products prior to and at the time of sale of the Products to consumers.

81. Plaintiff and class members, on the other hand, had no way of knowing of the Defect or the dangers presented by the Products prior to purchase.

82. The express warranties relating to the Products are collectively and individually the result of surprise and oppression and are so one-sided and overly harsh that they are both procedurally and substantively unconscionable.

83. Defendant knew, or should have known, of the Defect in its Products prior to and at the time of sale, including from its design of the Products, knowledge of industry safety guidance

and recommendations, receipt of CPSC complaints, as well as from warranty claims made directly to Defendant.

84. Defendant was in a superior position to know of, remedy, and disclose the Defect in its Products to Plaintiff and class members, who could not have known of their defective nature at the time of purchase.

85. There was a substantial disparity between the parties' bargaining power such that Plaintiff was unable to derive a substantial benefit from these express warranties.

86. A disparity existed because Defendant was aware that the Products were defective, while Plaintiff and class members had no notice or ability to detect said Defect, and had no reason to believe such a Defect existed due to Defendant's marketing.

87. Defendant abused the special relationship it created with consumers through its marketing and through its designing, manufacturing, marketing and selling the Products as safe and durable that consumers had no choice other than to trust Defendant's representations and thus accept the terms of the warranties.

88. Defendant knew Plaintiff and class members had no notice or ability to detect the Products' uniform Defect, and Defendant knew that Plaintiff and class members would bear the cost of remedying or replacing the Products.

89. Defendant knew of the Defect at the time of sale, while Plaintiff and class members had no ability to discover the Defect at the time of sale.

90. Defendant was in breach of the warranties at the time Plaintiff and class members purchased the Products because they were defective when they came off the assembly line. Thus, at the time the defective Products were sold to consumers, Defendant was already in violation of its warranties.

91. Defendant sold the Products knowing that they were not capable of being repaired or replaced with a non-defective Products.

92. Plaintiff and class members would have negotiated better terms in the purchase of the Products had they been aware of the Defect.

93. Defendant sold the Products with knowledge of the Defect and of the fact that the Products failed to conform to Defendant's marketing.

94. The terms of the express warranties unreasonably favor Defendant over Plaintiff and class members.

95. In addition, the express warranties failed in their essential purpose in that: (1) the Defect existed at the time the Products left the manufacturing facility; and (2) Defendant failed to disclose its knowledge of the Defect at any time and even when contacted by customers about the Products.

96. Accordingly, recovery by Plaintiff and class members is not restricted to the promise in any express warranties, and they seek all remedies that may be allowed.

**INJURY TO THE PUBLIC AT LARGE, THE POTENTIAL FOR FUTURE HARM AND NEED FOR INJUNCTIVE RELIEF**

97. Defendant's wrongful conduct harms the public-at-large. Namely, by misrepresenting the Products as safe and durable and by failing to disclose that the Products contain a uniform Defect and exposes consumers to the risk of serious injury and death, the harm extends to all class members and consumers who may purchase the Products.

98. In addition, because Defendant continues to encourage consumers to use the Products as described herein, Defendant's actions pose an ongoing risk to the public.

99. As such, a public injunction is necessary to enjoin Defendant's continued harm of consumers and the public-at-large.

100. Similarly, should Defendant not be enjoined from its unlawful and deceptive conduct, Plaintiff and class members face the potential for irreparable future harm, including purchasing and/or continuing to use the Products which are not safe or durable and instead, contain a uniform Defect and exposes consumers to the risk of serious injury.

## DEFENDANT'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT AND DUTY TO DISCLOSE THE DEFECT

101. Defendant knew, or should have known, when it sold the Products to the public that they suffered from the Defect.

102. Additionally, Defendant knew, or should have known, that the Defect caused the Products to fail in their regular and intended purpose including that they were unsafe, unstable and unsuitable for consumers' use.

103. Defendant's knowledge of the Defect is established through its design of the Products, knowledge of industry guidance and recommendations regarding safety, receipt of multiple reports of explosions and resulting injuries, and lastly, the Recall, which further confirms that the Defect presented a risk of harm and did cause harm since at least 2017.

104. Despite its knowledge, upon information and belief, Defendant did not remedy or eliminate the Defect in the Products or remove them from the stream of commerce.

105. Instead, Defendant continued to unlawfully advertise the Products as safe and durable and continued to sell the unreasonably dangerous Products to consumers.

106. The Recall, for the reasons stated above, does not absolve Defendant of liability, especially given its position is a worldwide leader in the power tool market.

107. In conjunction with Defendant's vast experience with power washers, these facts and reports of harm illustrate that Defendant knew, or should have known, of the Defect and the resulting incapability of the Products to conform to its marketing.

108. Defendant had a duty to disclose the Defect and to not conceal the Defect from Plaintiff and class members.

109. Defendant's failure to disclose, and/or active concealment of, the Defect places Plaintiff and class members at risk of serious injury.

110. Defendant, even in light of the Recall, is currently still allowing the use of the defective Products.

111. Had Plaintiff, class members and the consuming public known that the Products were defective, unsuitable for their marketed and intended use and risk their health and safety, they would not have purchased them.

112. Defendant wrongly placed on Plaintiff and class members the burden, expense and difficulty involved in discovering the Defect and determining that the Products are unsafe and paying for the cost of damages caused by the Defect.

## TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS

113. Defendant continuously manufactured, marketed and sold the defective Products to unsuspecting customers. At all times relevant, it continuously represented that the Products were fit for their intended use.

114. By continuously repeating these false representations and failing to disclose that the Products contain the Defect, Defendant engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendant might seek to apply.

115. As the designer and manufacturer of the Products, Defendant had actual knowledge since at least 2017 that the Products are defectively designed.

116. Defendant's knowledge of the Defect is evidenced by, amongst other things, the Recall and the multitude of reports of explosions and harm as a direct result of the Defect.

117. Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the Defect, and yet Defendant knowingly continued to allow the sale of the Products. Plaintiff's and other class members' claims are therefore not time barred.

118. Moreover, even after the Recall, there is no evidence that news of Defendant's Recall or Defect reached all Product owners.

119. Plaintiff and other class members could not reasonably discover and could not know facts that would cause a reasonable person to suspect that Defendant knowingly failed to disclose material information within its knowledge about the Defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations applies.

120. Throughout the time period relevant to this action, Defendant concealed from, and failed to disclose to, Plaintiff and the other class members vital information about the Defect described herein.

121. Defendant kept Plaintiff and the other class members ignorant of vital information essential to pursue their claims. As a result, neither Plaintiff nor the other class members could have discovered the Defect, even upon reasonable exercise of due diligence.

122. Defendant had a duty to disclose to Plaintiff and class members the true quality and nature of the Products and that the Products have a uniform Defect.

123. Instead, Defendant continued to market the Products as suitable for their intended purpose to further profit from the sale of its Products and prevent Plaintiff and other class members from seeking redress.

124. Plaintiff and the other class members justifiably relied on Defendant to disclose the true nature of the Products they purchased and/or owned because the Defect was not discoverable by Plaintiff and the other class members through reasonable efforts.

125. Defendant affirmative acts of concealment, including its continued marketing of the defective Products as safe, reliable and fit for their intended purpose while possessing knowledge of the Defect, further support estoppel and tolling of any applicable limitations period.

**FED. R. CIV. P. 9(b) ALLEGATIONS**

126. Although Defendant is in the best position to know information about the design, manufacture, distribution and sale of the Products as well as the facts surrounding the Defect during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

127. **WHO**: Defendant made material misrepresentations and/or omissions of fact through its marketing, on its website, product packaging, warranties, Owner's Manuals and labeling, through warranty claims, through reports of injuries associated with the Products and the Defect and through authorized retailers of the Products, which include statements such that the Products are not defective and are safe and suitable for their intended use.

128. **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products are defective, unsafe and unsuitable for their intended use in that the Products contain a uniform Defect. Defendant's employees and representatives made affirmative misrepresentations as a part of Defendant's marketing of the Products to Plaintiff and class members at the time of purchase regarding the same qualities. Defendant failed to adequately warn Plaintiff and class members that the Products contained the Defect, were not suitable for their intended use and the Products' Defect has caused injury. Further, Defendant's conduct has the effect of deceiving Plaintiff and class members into believing that the Products are not defective, and instead, are suitable for their intended use. Defendant knew, or should have known, the existence of the Defect is material to the reasonable consumer, including Plaintiff and class

members, and impacts their purchasing decisions, and yet Defendant omits a necessary warning that the Products are defective and are unsafe and unsuitable for their intended use.

129. **WHEN**: Defendant made material misrepresentations and/or omissions during the putative class periods and at the time Plaintiff and class members purchased the Products, prior to and at the time Plaintiff and class members made claims after realizing the Products contained a uniform Defect and continuously throughout the applicable class periods.

130. **WHERE**: Defendant's marketing message and omissions were uniform and pervasive, carried through material misrepresentations and omissions on the Products' labeling and packaging, its website(s) and the websites of authorized retailers.

131. **HOW**: Defendant made material misrepresentations of material facts regarding the Products, including, but not limited to, the existence of the uniform Defect as well as the associated risks.

132. **WHY**: Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, class members and all reasonable consumers to purchase and/or pay a premium price for the Products, the effect of which was Defendant profited by selling the Products to many thousands of consumers.

133. **INJURY**: Plaintiff and class members purchased, paid a premium or otherwise paid more for the Products when they otherwise would not have absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

134. Plaintiff brings this action individually and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of himself and the members of

the following proposed nationwide class ("Nationwide Class"):[20]

> During the fullest period allowed by law, all persons who purchased a Product in the United States, within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

135. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of himself and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):

> During the fullest period allowed by law, all persons who purchased a Product in the state of Massachusetts or any state with similar laws,[21] within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

136. Plaintiff further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of himself and the members of the following class ("Massachusetts Class"):

> During the fullest period allowed by law, all persons who purchased a Product in the State of Massachusetts, within the applicable statute of limitations, for personal use and not resale, until the date notice is disseminated.

---

[20] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, Multi-State Consumer Protection Class and Massachusetts Class.

[21] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq.*), Arkansas (Ark. Code §§ 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq.*), District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq.* and §§ 350, *et seq.*), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*), Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

137. Members of the Nationwide Class, Multi-State Consumer Protection Class and Massachusetts Class are referred to collectively as the "Class Members."

138. Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors or employees of Defendant or any entity in which Defendant has a controlling interest; (b) any legal counsel or employee of legal counsel for the Defendant; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Defect with Defendant.

139. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified

140. **Numerosity**: Class members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are class members as described above and who Defendant's deceptive and misleading practices damaged.

141. **Commonality**: The questions of law and fact common to the class members which predominate over any questions which may affect individual class members include, but are not limited to:

c. Whether the Products contain the Defect alleged herein;

d. Whether Defendant knew, or should have known, of the Defect;

e. Whether Defendant had a duty to disclose the Defect to consumers;

f. Whether Defendant's conduct alleged herein violated the consumer protection statutes alleged herein;

g. Whether Defendant failed to adequately warn Plaintiff and class members that the Products contained the Defect and resulting risk of harm;

h. Whether Defendant's representations and omissions were misleading or deceptive;

i. Whether Defendant omitted or failed to disclose material information to Plaintiff and class members regarding the Products;

j. Whether Defendant concealed from and/or failed to disclose to Plaintiff and class members that the Products contain the Defect;

k. Whether Defendant's conduct was unfair or illegal;

l. Whether Plaintiff and class members suffered economic injury;

m. Whether Defendant's conduct violates public policy;

n. Whether Defendant was unjustly enriched;

o. Whether Plaintiff and putative members of the Class suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

p. Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Products with the Defect;

q. Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

r. Whether Plaintiff and class members are entitled to injunctive, declaratory, or other equitable relief including modification of the Recall.

142. **Typicality**: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each class member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products and were exposed to the same concealed Defect. The law entitles Plaintiff to relief under the same causes of action as the other class members.

143. **Adequacy**: Plaintiff is an adequate class representative because his interests do not conflict with the interests of the class members he seeks to represent, his consumer fraud claims are common to all members of the Class, and he has a strong interest in vindicating their rights. Further, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

144. **Predominance**: Pursuant to Federal Rule of Civil Procedure 23(b)(3), the common issues of law and fact identified above predominate over any other questions that affect only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that the law requires is a narrow focus on Defendant's deceptive and misleading practices and the unform Defect.

145. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Plaintiff and class members will continue to be deceived by Defendant's marketing of the Products and unknowingly be exposed to the Defect and associated risks thereto. Defendant acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, are necessary in this action.

146. Plaintiff further seeks injunctive and declaratory relief requiring Defendant to cease its unfair, deceptive and unlawful conduct, including a complete recall of the Products and full reimbursement for the Products' full purchase price.

147. Plaintiff also seeks a declaration that the Products suffer from the Defect and that all warranties cover the Defect, which existed at the time of sale of the Products to consumers, which was known to Defendant and unknown to consumers.

148. Plaintiff and class members were harmed and will experience irreparable future harm should Defendant's conduct not be enjoined because they will continue to use the Products, which still contains the Defect even if the remedy is installed as instructed by the Recall.

149. **Superiority**: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of over a million of individual class members is impracticable, cumbersome, unduly burdensome and a waste of judicial and/or litigation resources;

b. The individual claims of the class members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome and expensive, if not totally impossible, to justify individual actions;

c. When Defendant's liability is adjudicated, all class members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty that will be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among class members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class members' interest in efficient resolution by single class action outweighs their interests in individually controlling the prosecution of separate actions; and

i. It would be desirable to concentrate in this single venue the litigation of all class members who Defendant's uniform false advertising induced to purchase their Products.

150. For two reasons, this Class is properly brought and should be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3). First, questions of law or fact common to class members predominate over any questions affecting only individual members. Second, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

151. The Recall only provides a free replacement kit to consumers. But the Recall provides neither monetary damages, an offer to allow consumers to return their Products nor assurances that the free replacement kit will perform as advertised or warranted. Accordingly, the Recall does not address the underlying concerns expressed in this lawsuit.

## CAUSES OF ACTION

## COUNT I

### COMMON LAW FRAUD

***(By Plaintiff, individually, and on behalf of the Nationwide Class, or in the Alternative, the Massachusetts Class)***

152. Plaintiff, individually, and on behalf of the Nationwide Class, or in the alternative, the Massachusetts Class, realleges paragraphs 1 through 151 as if fully set forth herein.

153. Defendant's conduct here was, and continues to, be fraudulent because it has the effect of deceiving consumers into believing the safe and durable marketing related to the Products, when in fact the Products contain the Defect.

154. Defendant knowingly, willfully, fraudulently and/or recklessly concealed and suppressed material facts regarding the Products.

155. As detailed *supra*, Defendant made false or misleading statements to Plaintiff and class members regarding the safety of the Products. These uniform and pervasive representations were made through Defendant's marketing, including on the Products themselves, label and packaging materials, the websites of Defendant and its authorized retailers and other promotional materials for the Products.

156. Defendant's representations were false and misleading because the Products contain the Defect and the associated risks to consumers, including serious injury.

157. As describe herein, prior to and after distributing the Products into the consumer marketplace, Defendant knew that the Products contained the Defect and presented the associated risks to consumers, including serious injury. Defendant also knew that the Products' design, manufacture and marketing were inconsistent with industry guidance and standards, including from the CPSC. Nonetheless, Defendant, through its misrepresentations, misleading statements

and omissions detailed herein, continued to sell the Products in the United States, in order to increase its own profits, and garner market share, while putting the safety of more consumers at risk.

158. Defendant knew the representations were false and intended that Plaintiff and class members rely on them.

159. These misrepresentations and omissions were material to Plaintiff's and class members' decision to acquire the Products. Plaintiff and members of the Class justifiably relied on Defendant's misrepresentations of material facts and omissions regarding the Products, as described herein.

160. Defendant's conduct was further fraudulent because Defendant failed to disclose the Defect associated with the Products. Specifically, Defendant failed to adequately warn Plaintiff and class members that the Products contained the Defect, were not safe or durable and could cause and had caused serious injury.

161. Defendant has a duty to disclose the truth regarding the safety of the Products, because the safety of the Products has a direct impact on the health and safety of the consumers who utilize them. This duty arose from the fact that Defendant: had exclusive and/or far superior knowledge and access to knowledge regarding the safety and durability of the Products; affirmatively and intentionally concealed material facts from Plaintiff and class members; and knew that the Products were not safe for their marketed and intended use.

162. The material facts Defendant represented and omitted to disclose were made to Plaintiff and members of the Class when they purchased the Products.

163. Defendant intended that its misrepresentations and omissions of material fact would deceive or mislead Plaintiff and members of the Class and induce them to purchase the Products.

164. Plaintiff and members of the Class justifiably relied on Defendant's misrepresentations and omissions of material facts regarding the Products, as described herein.

165. Defendant's conduct showed malice, motive and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because Defendant's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

166. Defendant's misrepresentations and omissions of material facts directly and proximately caused the damages suffered by Plaintiff and members of the Class.

167. As a result of Defendant's misrepresentations and omissions of material facts, Plaintiff and members of the Class were damaged in an amount to be proven at trial.

## COUNT II

## NEGLIGENT MISREPRESENTATION

***(By Plaintiff, individually, and on behalf of the Nationwide Class, or in the Alternative, the Massachusetts Class)***

168. Plaintiff, individually, and on behalf of the Nationwide Class, or in the alternative, on behalf of the Massachusetts Class, realleges paragraphs 1 through 151 as if fully set forth herein.

169. As a seller of the Products, Defendant had a duty to give correct information to Plaintiff and class members regarding the truth and accuracy of the material facts, including knowledge of the Defect. Defendant had sole possession and control of this information and had a duty to disclose it accurately to Plaintiff and class members.

170. Defendant created a special relationship with Plaintiff and class members through its misrepresentations and omissions regarding safety and through its designing, manufacturing, marketing and selling the Products specifically suitable for people to use as intended, despite the presence of the Defect.

171. Defendant intended the sale of the Products not only to affect Plaintiff and class members, but Defendant actually considered the particular needs of consumers and designed, manufactured and sold the Products for those consumers to meet their particular needs.

172. Defendant held, or appeared to hold, unique or special expertise and knowledge of the Products. Defendant and Plaintiff, as well as class members, had a special relationship of trust and confidence, and Defendant persuaded Plaintiff and class members to purchase the Products based on its misrepresentations and reputation of having expertise and knowledge.

173. Defendant affirmatively misrepresented and omitted material facts regarding the Products' safety, including but not limited to explicit or implicit assurances that the Products were safe and suitable for use. These false and misleading representations were made for the express purpose of inducing Plaintiff and class members to purchase the Products. Defendant knew, or should have known, that the Products posed serious safety risks, and yet marketed and sold them as appropriate for use, thereby misleading reasonable consumers into believing it met applicable safety standards.

174. Because Defendant purposefully concealed the defective nature of the Products and the serious safety risks caused by the Defect, Plaintiff and class members were not reasonably able to discover the Defect, despite their exercise of due diligence.

175. Defendant knew, or otherwise should have known, that the Products contained the Defect and posed serious safety risks based upon: (1) Defendant's own internal testing, data and surveys; (2) Defendant's Recall; and (3) the multiple incident reports dated from 2017.

176. Despite Defendant's knowledge of material facts concerning the existence of the serious safety risks posed by the Defect, Defendant actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

177. Defendant omitted, concealed and failed to disclose to consumers that the Products poses serious safety risks to consumers, including that the Products' design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury. Rather than disclose this information, Defendant marketed the Products as safe and suitable for their intended purpose.

178. The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiff and other class members, were material, in part, because they concerned an essential aspect of the Products, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Products. Rather than disclose this information, Defendant marketed the Products as complying with safety standards and regulations, with the utmost manufacturing and design.

179. Defendant intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other class members, to purchase the Products.

180. Plaintiff and other class members, without knowledge of the true nature of the Products, justifiably acted or relied upon the concealed and/or nondisclosed material facts to their detriment, as evidenced by their purchase of the Products.

181. As a direct and proximate result of Defendant's concealment and/or nondisclosure of material facts, consumers, including Plaintiff and other class members were damaged as alleged herein, and are entitled to recover damages. Plaintiff and other class members would not have purchased the Products on the same terms had they known that it contained the Defect and posed serious safety risks.

182. Plaintiff and class members are entitled to all relief the Court finds proper as a result of Defendant's conduct described herein.

## COUNT III

## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
***(By Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class)***

183. Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class, realleges paragraphs 1 through 151 as if fully set forth herein.

184. Plaintiff and the Multi-State Consumer Protection Class members were injured as a result of Defendant's violations of the state consumer protection statutes listed in paragraph 136, footnote 22, *supra*. These state consumer protection statutes provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

185. Defendant's conduct, as alleged herein, violates the consumer protection, unfair trade practices and deceptive laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

186. Defendant's marketing of the Products violates these prohibitions by deceiving consumers into believing that the Products are fit for their intended purpose despite the presence of the Defect.

187. Defendant engaged in fraudulent, unfair and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

188. Specifically, Defendant advertised in a misleading and deceptive manner that the Products are fit for their intended purpose and did not contain the Defect that presents the associated risks. Defendant chose to package, label and market the Products in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all

reasonable consumers who purchase the Products would be impacted by, and would reasonably believe, its false and misleading representations.

189. Defendant intended for Plaintiff and Multi-State Consumer Protection class members to reasonably rely upon the material misrepresentations concerning the true nature of the Products.

190. Defendant's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiff and Multi-State Consumer Protection class members to be deceived about the true nature of the Products.

191. Further, despite Defendant's knowledge of material facts concerning the existence of the serious safety risks posed by the Products, Defendant actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

192. Defendant knew, or otherwise should have known, that the Products contained the Defect and posed serious safety risks based upon: (1) Defendant's own internal testing, data and surveys; (2) Defendant's Recall; and (3) the multiple incident reports dated from 2017.

193. Defendant omitted, concealed and failed to disclose to consumers that the Products pose serious safety risks, including that the Products' design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury. Rather than disclose this information, Defendant marketed the Products as safe and suitable for their intended purpose.

194. The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiff and other class members, were material, in part, because they concerned an essential aspect of the Products, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding

whether to purchase the Products. Rather than disclose this information, Defendant marketed the Products as complying with safety standards and regulations, with the utmost manufacturing and design.

195. Defendant intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other class members, to purchase the Products.

196. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and Multi-State Consumer Protection class members suffered ascertainable losses.

197. Had they been aware of the true nature of the Products, Plaintiff and Multi-State Consumer Protection class members either would have paid less for the Products or would not have made the purchases at all.

198. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection class members are entitled to recover compensatory, restitution, punitive and special damages, including, but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted by relevant law.

## COUNT IV

### UNJUST ENRICHMENT/QUASI CONTRACT
***(By Plaintiff, individually, and on behalf of the Massachusetts Class)***

199. Plaintiff, individually, and on behalf of the Massachusetts Class, realleges paragraphs 1 through 151 as if fully set forth herein.

200. Plaintiff and the putative class members conferred a benefit on Defendant by purchasing the Products—payments that Defendant knowingly accepted while aware of the Products' Defect and unfitness for their intended use.

201. Defendant either knew, or should have known, that the payments rendered by Plaintiff and class members were given with the expectation that the Products had the qualities, characteristics and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

202. By its wrongful acts and omissions described herein, including selling the Products, which contained both the Defect and were inoperative for the intended use, Defendant was unjustly enriched at the expense of Plaintiff and putative class members.

203. Defendant's wrongful conduct directly caused Plaintiff's detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

204. Defendant unjustly profited from its unlawful, unfair and deceptive conduct at the expense of Plaintiff and the putative class members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits, and other compensation obtained through the sale of the Products, as such enrichment was directly tied to the misconduct alleged herein.

205. Defendant was unjustly enriched by retaining revenue from class members' purchases of the Products. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed and sold the defective Products while omitting material facts, causing Plaintiff and class members to purchase Products they otherwise would not have purchased had the truth been disclosed.

206. Defendant continued to manufacture the Products with the inherent Defect even after knowing—and concealing—a=multiple instances of reported explosions and harm. Even

after these known incidents, Defendant continued to tout the safety of its Products, considerably profiting for decades.

207. Defendant's conduct allows it to knowingly realize substantial revenue from selling the Products at the expense of, and to the detriment of, Plaintiff and class members, and Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental justice, equity and good conscience principles.

208. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and class members' overpayments.

209. Plaintiff and members of the Class seek disgorgement of all profits resulting from such overpayment.

**COUNT V**

**NEGLIGENCE**
***(By Plaintiff, individually, and on behalf of the Massachusetts Class)***

210. Plaintiff, individually, and on behalf of the Massachusetts Class, realleges paragraphs 1 through 151 as if fully set forth herein.

211. Defendant directly or indirectly, caused the Products to be sold, distributed, packaged, labeled, marketed, promoted and/or used by Plaintiff and the other class members.

212. At all times relevant, Defendant had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of the Products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the Products.

213. At all times relevant, Defendant had a duty to exercise reasonable care in the marketing, advertisement and sale of the Products. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using the Products and appropriate, complete and accurate warnings concerning the potential safety risks regarding the use of the Products, and, in particular, their uniform Defect.

214. At all times relevant, Defendant knew or, in the exercise of reasonable care should have known, of the Defect and the corresponding risks associated thereto.

215. Defendant knew, or otherwise should have known, that the Products posed serious safety risks to consumers, because of, among other things, their own internal testing, data and surveys, the Recall and the multiple reports of explosions and harm associated with the Defect.

216. Accordingly, at all times relevant, Defendant knew or, in the exercise of reasonable care should have known, that use of the Products created a dangerous and unreasonable risk of injury o consumers when using the Products, including Plaintiff and the other class members.

217. Defendant also knew or, in the exercise of reasonable care should have known, that users and consumers of the Products were unaware of the Defect and the associated risks.

218. Defendant omitted, concealed and failed to disclose to consumers that the Products poses serious safety risks to consumers, including that the Products were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contained the Defect. Defendant failed to adequately warn Plaintiff and class members that the Products contained the Defect, were not safe or suitable for their marketed and intended use and could cause consumers to be placed in the risk of harm. Rather than disclose this information, Defendant, through its marketing, *inter alia*, marketed the Products as safe and durable for their marketed and intended use.

219. A reasonable manufacturer, distributor or seller of the Products, under the same or similar circumstances, would have warned of the Defect.

220. Defendant did not warn of the particular risks associated with the Products as detailed herein, for reasons which fell below the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about.

221. As such, Defendant breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale and distribution of the Products, in that Defendant manufactured, marketed, promoted and sold the Products with the uniform Defect, knew or had reason to know of the Defect inherent in the Products, knew or had reason to know that consumers' use of the Products created a significant risk of serious injury and is unreasonably dangerous for consumers and failed to prevent or adequately warn of these risks.

222. In breach of its duties, Defendant negligently: failed to design, manufacture, formulate and package the Products without the uniform Defect; designed, manufactured and formulated the Products such that they contained the uniform Defect; failed to conduct adequate research and testing to determine the extent to which the Products were likely to present a serious risk of harm to consumers; and failed to warn that the Products could and have caused consumers to be placed in dangerous situations resulting in injury.

223. Despite an ability and means to investigate, study and test the Products and to provide adequate warnings, Defendant failed to do so. Indeed, Defendant wrongfully concealed information and further made false and/or misleading statements concerning the safety of the Products.

224. Defendant was negligent in the following respects:

s. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products without thorough and adequate pre-and post-market testing;

t. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products while negligently and/or intentionally concealing and failing to disclose the results of trials tests, and, consequently, the risk of serious injury associated with use of the Products;

u. Failing to undertake sufficient studies and conduct necessary testing and adverse event analysis to determine whether the Products were safe for their intended use;

v. Failing to use reasonable and prudent care in the design, research, manufacture and development of the Products to avoid the risk of serious harm and death to consumers associated with the prevalent use of the Products;

w. Failing to provide adequate instructions, guidelines and safety precautions to those consumers who Defendant could reasonably foresee would use the Products;

x. Failing to disclose to Plaintiff, class members, users/consumers and the general public that use of the Products presented risks or serious injury to consumers;

y. Failing to warn Plaintiff and class members, consumers and the general public that the Products' risk of harm was unreasonable and that there were safer and effective alternative Products available to Plaintiff and other consumers;

z. Systematically suppressing or downplaying contrary evidence about the risks, incidence and prevalence the Defect uniformly present in the Products;

aa. Representing that its Products were safe for their intended use when, in fact, Defendant knew, or should have known, that the Products were not safe for their intended purpose;

bb. Failing to make and/or submit any changes to the Products' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Products and related Defect;

cc. Advertising, marketing and recommending the use of the Products while concealing and failing to disclose or warn of the dangers

known by Defendant to be associated with or caused by the use of the Products and/or Defect;

dd. Continuing to disseminate information to its consumers, which indicates or implies that Defendant's Products are safe and suitable for their advertised and intended use; and

ee. Continuing the manufacture and sale of its Products with the knowledge that the Products were unreasonably unsafe and dangerous to consumers.

225. Defendant knew, or otherwise should have known, that it was foreseeable that consumers, including Plaintiff and the other class members, would be placed at risk of serious injury as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution and sale of the Products.

226. Plaintiff and the other class members did not know the nature and extent of the injuries that could result from the intended use of the Products.

227. Defendant's negligence was the proximate cause of the injuries, harm and economic losses that Plaintiff and the other class members suffered, as described herein.

228. Defendant's failure to warn or instruct was a substantial factor in causing Plaintiff's and other class members' harm.

229. Defendant's conduct, as described herein, was reckless. Defendant regularly risked the health and safety of consumers and users of the Products, including Plaintiff and the other class members, with full knowledge of the dangers of the Products. Defendant made conscious decisions not to redesign, re-label, warn or inform the unsuspecting public, including Plaintiff and the other class members.

230. Defendant further made the decision to issue the ineffective, insufficient and inadequate Recall, as described herein.

231. Defendant's reckless conduct therefore warrants an award of aggravated or punitive damages.

232. As a direct and proximate result of Defendant's wrongful acts and omissions in placing the defective Products into the stream of commerce without adequate warnings of the risks of serious injury, Plaintiff and the other class members were damaged.

## COUNT VI

### BREACH OF EXPRESS WARRANTY
***(By Plaintiff, individually, and on behalf of the Massachusetts Class)***

233. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 151 as though set forth fully herein.

234. In connection with its sale of the Products, Defendant expressly provided a three-year limited warranty (the "Warranty") that the Products were free from defects in materials and workmanship. The Warranty stated as follows:

> TTI warrants that the unit shall be free from defects in material and workmanship for a period of three (3) years from the date of purchase when it is used for personal, family or household use.

235. Upon information and belief, each one of the Products has an identical or substantially identical Warranty. Each of the Products' Owner's Guides includes the Warranty.

236. Defendant further warrants that: (a) the Products are a pressure washers; and (b) one can use them as such.

237. The Products are defectively manufactured as alleged, and Defendant's Warranty covers them. Defendant has admitted: (a) the Products, as sold, are not safe; and (b) one cannot use them as pressure washers.

238. Plaintiff and the class members have privity of contract with Defendant through their purchase of the Products from an authorized retailer as stated in the written Warranty that

accompanied the purchase and expressly applies to purchasers of the Products.

239. Defendant manufactured and marketed the Products.

240. Plaintiff and the class members either: (a) purchased the Products by and through Defendant's authorized sellers for retail sale to consumers; or (b) were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers, when bought from a third party. Defendant knew, or had reason to know, of the specific use for which Plaintiff and the class members purchased the Products.

241. The express written Warranty was a material part of the bargain between Defendant and consumers. At the time it made this express Warranty, Defendant: (a) knew of the purpose for which consumers, including Plaintiff and class members, would use the Products; and (b) designed and intended them to be used for that specific purpose.

242. Defendant breached its express Warranty by selling a pressure washer that was neither: (a) free of defects; (b) made for years of safe and dependable operation; (c) made from merchantable material and workmanship; nor (d) capable of being used for the ordinary purpose, suitable and reasonably safe to use as pressure washers. Defendant also breached its express written Warranty by selling Products that were defective when made and, thus, contained the Defect on the very first day of purchase, creating a serious safety risk to Plaintiff and class members

243. The Products that Plaintiff and each class member purchased were subject to the Defect and caused each of them injury because they would not have purchased the Products, or would have paid less for the Products, had they known of the Defect. Defendant expressly warranted in writing that it would repair or replace any defect in the Products. Additionally, the UCC specifically provides that the damage associated with breach of warranty is the difference

between the product as warranted and the product delivered.

244. Upon information and belief, Defendant received notice and has known of the Defect since at least 2017 through customer warranty claims, consumers reporting problems with the Product, customer complaints and its own internal and external testing.

245. But Defendant failed to provide an adequate remedy. Defendant offered to provide a replacement kit through the recall, but Defendant neither assures consumers that the replacement kit is free from the Defect nor provides reasonable assurance that the Defect is resolved. Accordingly, Plaintiff and the Class seek damages resulting from the Defect.

246. As a result of Defendant's breach of its express written Warranty, Plaintiff and class members suffered damages.

**COUNT VII**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
***(By Plaintiff, individually, and on behalf of the Massachusetts Class)***

247. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 151 as though set forth fully herein.

248. Defendant defectively manufactured the Products purchased by Plaintiff and class members, and those Products posed a serious and immediate safety risk to consumers, including Plaintiff and class members, and the general public.

249. All the Products sold by Defendant left Defendant's facilities and control with the Defect in the manufacture of the Products.

250. The Defect places Plaintiff and class members at serious safety and property damage risk upon using the Products in their homes. Defendant admits that one cannot safely use the Products, as sold, as pressure washers.

251. The law requires manufacturers or sellers of a product to ensure that the products:

(a) are merchantable and reasonably fit for the ordinary purposes for which ordinary consumers use them; and (b) are acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Defendant and purchasers, including Plaintiff and the class members.

252. Defendant breached the implied warranty of merchantability because the Products: (a) are defective and pose a serious safety risk; (b) were not fit for the ordinary purposes for which they were used; (c) would not pass without objection; and (d) failed to conform to the standard performance of like products. The Defect is substantially certain to manifest during the reasonable expected life of any one of the Products that do not have the replacement capacitor.

253. Defendant knew, or should have known, that the Products posed a safety risk and were defective, and Defendant breached the implied warranties at the time it sold the Products to Plaintiff and class members or otherwise placed them into the stream of commerce.

254. Home Depot is an authorized dealer of Ryobi products, including the pressure washers at issue here. Home Depot has an exclusive retail partnership with Ryobi for North America, meaning that Ryobi-branded tools are only sold at Home Depot in the region. Home Depot is a licensee of the Ryobi brand for sale.

255. As an authorized dealer with an exclusive partnership in North America, Defendant TTI would have impliedly warranted to Home Depot that its Products would pass without objection in trade under the contract description; were fit for the ordinary purpose for which the Products would be used; and conformed to the promises or affirmations of fact made on the container or label. Plaintiff and class members were third-party beneficiaries of that implied warranty because they were the intended and foreseeable end-users of the Products.

256. Plaintiff and class members relied on written materials of the manufacturer,

Defendant TTI.

257. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and class members bought the Products without knowledge of the Defect or the serious safety risk.

258. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and class members purchased unsafe and defective Products that were not fit for their intended purpose of being reasonably safe to use as pressure washers, without disclosing that they had a critical safety-related Defect.

259. Defendant received notice of the Defect, and its breaches of the implied warranties, through: (a) customer warranty claims that reported problems with the Products; (b) customer complaints; and (c) its own testing.

260. Despite having notice and knowledge of the Defect, Defendant failed to provide: (a) a Defect-free pressure washer to Plaintiff and class members; (b) adequate replacement of the defective Products; and (c) any form of compensation for the economic damages that resulted from the Defect.

261. Any attempt by Defendant to disclaim the implied warranty was improper, insufficient and of no effect.

262. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and class members suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered, against Defendant, by an order that does the following:

A. certifies the proposed Classes

B. designates Plaintiff as the class representative, designates the undersigned as class counsel and requires Defendant to bear the costs of class notice;

C. enjoins Defendant from selling the Products until either: (a) they can be safely used as pressure washers that meet industry standards; or (b) full disclosure of the failure to meet industry standards appears on all packaging;

D. requires Defendant to engage in: (a) a corrective advertising campaign; and (b) any further necessary affirmative injunctive relief, such as recalling the existing Products;

E. awards: (a) declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein; and (b) injunctive relief to remedy Defendant's past conduct;

F. requires Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be: (a) an unlawful, unfair or fraudulent business act or practice; (b) untrue or misleading advertising; or (c) a violation of law, plus pre-judgment and post-judgement interest thereon;

G. requires Defendant to disgorge or return all moneys, revenues and profits obtained by means of any wrongful or unlawful act or practice;

H. requires Defendant to pay all actual and statutory damages, permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000.00;

I. requires Defendant to pay punitive damages on any count so allowable;

J. awards attorneys' fees and costs to Plaintiff and the Class; and

K. provides for all other just, proper relief.

**JURY TRIAL DEMANDED**

Pursuant to Massachusetts Rule of Civil Procedure 1-038, Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: October 14, 2025

Respectfully submitted,

*/s/ Scott C. Harris*

Scott C. Harris
**BRYSON HARRIS SUCIU & DEMAY PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Fax: (919) 600-5035
Email: sharris@brysonpllc.com

Russell Busch
**BRYSON HARRIS SUCIU & DEMAY PLLC**
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (630) 796-0903
Email: rbusch@brysonpllc.com

Melissa S. Weiner
Ryan T. Gott
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Emails: mweiner@pwfirm.com
rgott@pwfirm.com

Rachel Soffin
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
Email: rsoffin@pwfirm.com

Nick Suciu III
**BRYSON HARRIS SUCIU & DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@brysonpllc.com

Trenton R. Kashima
**BRYSON HARRIS SUCIU & DEMAY PLLC**
402 West Broadway, Suite 1760
San Diego, CA 92101
Telephone: (619) 810-7047
Email: tkashima@brysonpllc.com

***Counsel On Behalf of Plaintiff and the Proposed Classes***